UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PAMELA J. PODEMSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:06-CV-521 PPS |
| ) | |
| HEARTLAND RV, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Pamela Podemski was employed as an electrician at Heartland RV for eleven months. During her tenure, she was late for work, repeatedly got into arguments with her coworkers, told dirty jokes, and wore inappropriate clothing. Company management also had the impression that she was unwilling to increase her workload to support production increases. Therefore, when Heartland decided to reduce its workforce for economic reasons, the company selected her for termination.

Eight months earlier, Podemski complained to Heartland that Brian Edison, a coworker, was sexually harassing her. Podemski made a second complaint two months later, which Heartland fully investigated. After concluding that Podemski's allegations were true, the company issued Edison a written warning, demoted him, transferred him to another facility and ultimately terminated him. Although Heartland fully resolved her grievance, Podemski now claims she was fired in retaliation for complaining about Edison. Heartland seeks Summary Judgment, and for the following reasons, its Motion, (DE 34), is granted.

**FACTUAL BACKGROUND**

**A.     Podemski's Employment with Heartland**

Heartland manufactures recreational vehicles, also known as coaches, in Elkhart, Indiana.  (DE 35-2, Ison Decl. ¶ 3.)  Podemski was hired as an electrician in Heartland's Electrical Department on March 17, 2005.  (*Id.* ¶ 2.)  Her job responsibilities included installing interior components, as well as wiring on the roofs, which required her to stand on scaffolding above the production line.  (DE 35-3, Coryn Dep. at 15-16.)  Podemski's direct supervisor in the Electrical Department was Jason Coryn. (DE 35-1, Def.'s Mem. at 5.)  Thomas Ison, who became Plant Manager in November 2005, was responsible for all plant operations and final employment-related decisions.  (*Id.*)  Timothy Hiland was the Assistant Plant Manager as of December 2005.  (*Id.*)  Jack Culbertson, Heartland's Vice President of Production, was responsible for certain human resources issues, including employee discipline.  (DE 35-7, Culbertson Decl. ¶ 3.)

Podemski performed her electrician duties well.  (DE 41, Pl.'s Br. at 4; DE 42-3, Coryn Dep. at 10, Hiland Dep. at 21.)  There were however several problems with her work behavior, particularly regarding her working relationship with other Heartland employees.  Her group leader, Coryn, observed regular arguments between Podemski and her coworkers.  (DE 35-3, Coryn Dep. at 12-13.)  Coryn felt that he often had to play referee between Podemski and other employees.  (*Id.* at 14-15.)  In his opinion, these arguments wasted a lot of time and disrupted the work environment.  (*Id.* at 10, 24.) Tommy Cohee, a group leader in a different, but adjacent, department, also observed these arguments.  (DE 42-3, Cohee Dep. at 8-10.)  Although he did not think that Podemski's arguments disrupted workflow, he estimated that the arguments occurred

2

every two to three weeks with increased frequency towards the end of her employment. (*Id*. at 8-10, 13.)  Cohee particularly recalled heated arguments between Podemski and an employee named Baine.  (*Id.* at 8-9.)

Podemski's attire and vulgar language also created problems with her coworkers. Heartland has a policy in its employee handbook prohibiting "[s]hort-shorts, bare mid-rifts, or other revealing clothing" in the workplace.  (DE 35-6, Podemski Dep. Ex. C.) Plant Manager Ison testified that he received complaints from approximately ten employees, including two women, that Podemski's shorts were inappropriate.  (DE 35-2, Ison Decl. ¶ 16.)  Management in fact told Podemski that her shorts were too revealing and instructed her to wear more appropriate clothing.  (DE 35-7, Culbertson Decl. ¶ 20.) But Podemski continued to disregard these instructions.  (DE 35-2, Ison Decl. ¶ 16.) Therefore, on January 13, 2006, Ison warned her that she would be terminated if she did not comply with Heartland's dress code.  (*Id. ¶* 17.)

Podemski further offended her coworkers by telling dirty jokes.  (DE 41, Pl.'s Br. at 3.)  She admitted that she once joked about menstruating on her co-workers working below her on the production line.  (DE 35-5, Podemski Dep. at 15.)  Although Podemski was not disciplined for her vulgar language, she was instructed to clean up her act.  (DE 35-7, Culbertson Decl. Ex. D.)

Podemski asserts that she was not the only one with a foul mouth and indecent wardrobe.  Specifically, she believed three female employees in different departments wore similarly short shorts.  (DE 42-2, Podemski Decl. ¶ 25.)  She also identified four other employees who used bad language at work.  (*Id.* ¶ 26.)

Podemski also had problems with punctuality.  Since June 2005, Heartland

3

identified forty-five separate occasions in her time cards reflecting that Podemski was late for work. (DE 35-6, Podemski Dep. Ex. E.) According to her supervisor, it was not uncommon for Podemski to be five or ten minutes late. (DE 35-3, Coryn Dep. at 17.) Podemski disputes that she was late on forty-five occasions. She claims that the time cards prove that she was actually early to work; the discrepancy is whether she was scheduled to start work at 5:00 am, 5:30 am or 6:00 am. (DE 42-2, Podemski Dep. at 32.) In any event, she does admit that she received a written warning for tardiness. (*Id.*)

Heartland also perceived Podemski as not being a team player. When Heartland proposed increasing its production from three coaches a day to four, the company got the impression that Podemski was unwilling to increase her workload to accommodate these goals. (DE 35-7, Culbertson Decl. ¶ 17.) According to Culbertson, Podemski told him that she could not and would not work on more than three units per day. (*Id.*) Culbertson informed Ison, the Plant Manager, that Podesmki was reluctant to support the production increase. (*Id.* ¶ 18; DE 35-2, Ison Decl. ¶ 12.) Sometime later, Culbertson and Ison met with Coryn to discuss inefficiencies in the Electrical Department. (Ison Decl. ¶ 13.) During that meeting, Coryn also stated that Podemski was unwilling to increase production and was responsible for decreasing production efficiency. (*Id.*) Based on the conversations with Coryn and Culbertson, Ison perceived that Podemski was not supportive of the company's plans to increase production. (*Id.* ¶ 14.) Podemski, however, maintains that she was willing to increase production. (DE 42-2, Podemski Dep. at 36.)

**B.     Podemski's Sexual Harassment Complaint**

In May 2005, Podemski complained to Ison's predecessor, then Plant Manager

4

Tim Pierson, that an employee named Brandon Edison was sexually harassing her. (DE 35-5, Podemski Dep. at 11-12.) After first complaining to Pierson, the problem did not go away. (*Id.* at 12.) Podemski then complained a second time to Vice President of Production Jack Culbertson in July 2005. (*Id.*) Specifically, Podemski alleged that Edison had touched her inappropriately and made sexually motivated comments towards her. (DE 35-7, Culbertson Decl. Ex. A.) Culbertson conducted a full investigation and concluded that Podemski's allegations were true. (*Id.* ¶ 10.) Culbertson disciplined Edison by issuing a formal written warning, demoting him, and transferring him to another facility. (*Id.*) Heartland eventually terminated Edison. (*Id.*) During this investigation Culbertson naturally spoke with several employees. During these interviews he received complaints from the employees about Podemski's vulgar language. (*Id.* ¶ 11-12.)

Podemski claims that Coryn (her direct supervisor) told her to "watch her back" soon after the incident with Edison. (DE 42-2, Podemski Decl. ¶ 17.) She further stated that it was not unusual for Coryn to say this to her after meetings with management. (*Id.* ¶ 18.) Podemski believes that Coryn was expressing to her that Hiland (the Assistant Plant Manager) was motivated to get even with her because Hiland was friends with Edison. (*Id.* ¶ 19.) Coryn denies using this expression, but did indicate that he occasionally warned Podemski after managerial meetings that she needed to improve her working relationship with people, stop being tardy, and comply with the dress code. (DE 42-3, Coryn Dep. at 37.)

C.     **Podemski's Termination**

In January 2006, Heartland decided to decrease production because the company

5

was unable to maintain quality standards at its production levels. (DE 35-2, Ison Decl. ¶ 18.) Heartland concluded that it needed to reduce the plant's workforce by nine employees in order to cut costs and accommodate the decrease in production. (*Id.* ¶ 19.) Consequently, Ison and Hiland held a meeting with the supervisors for all of Heartland's production departments and asked them to recommend employees from their departments for termination as part of the reduction in force. (*Id.* ¶ 21.)

During that meeting, Coryn, Podemski's group leader, informed Hiland that "if we had to reduce the payroll, . . . my opinion would be to get rid of [Podemski]." (DE 35-3, Coryn Dep. at 8.) He selected Podemski because she did not get along with the other employees in the department and he thought he could improve the work environment by removing her. (*Id.*) Coryn also factored Podemski's tardiness, inappropriate attire and vulgar language in his decision. (*Id.* at 10, 23-24, 27, 32, 38.) Coryn testified that he did not consider Podemski's sexual harassment complaint against Edison when he selected her for termination. (*Id.* at 38-39.)

Hiland relayed Coryn's recommendation to Ison, who approved Podemski's termination. (DE 35-2, Ison Decl. ¶ 22.) Ison stated that he felt Coryn was in the best position to select an employee for termination from his own department. (*Id.* ¶ 23.) He also perceived Podemski as unwilling to increase production and felt that her inappropriate attire continued to be a problem. (*Id.* ¶ 24.) Since Ison was not employed by Heartland when Podemski made her harassment complaint, he did not consider her complaint in his decision to terminate her. (*Id.* ¶¶ 9, 25.) Ison approved the termination of eight other employees, five men and three women, all of whom were chosen by their group leaders. (*Id.* ¶¶ 26, 28, Ex. B.) On February 1, 2006, Hiland and Coryn informed

6

Podemski that Heartland was reducing its workforce and that she was selected for termination. (DE 42-3, Hiland Dep. at 21-22; DE 35-5, Podemski Dep. at 42-43.)

## DISCUSSION

Podemski's alleges that Heartland terminated her because she made a sexual harassment complaint against another employee six months prior to Heartland's reduction in force. (*Id*.) Heartland says she was chosen for the reduction in force because she was tardy, told foul jokes, wore inappropriate clothes to work, and repeatedly argued with her co-workers. Heartland therefore seeks summary judgment.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case on which that party will bear the burden of proof at trial. A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and draws all inferences in the light most favorable to the non-moving party." *McCoy v. Maytag Corp.*, 495 F.3d 515, 520 (7th Cir. 2007).

Title VII prohibits an employer from discriminating against an employee because "[she] has opposed any practice made an unlawful employment practice by [Title VII] or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation proceeding or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a). A

7

plaintiff can prove retaliation using either the direct or indirect method of proof.  *Nichols v. Southern Ill. Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007).  Podemski tries both.

**A.     Direct Method**

To prove retaliation under the direct method, a Title VII plaintiff must offer evidence that: (1) she engaged in a statutorily protected activity; (2) the defendant subjected her to an adverse employment action; and (3) a causal connection exists between the two events.  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). Podemski plainly engaged in statutorily protected activity when she complained about sexual harassment and she was subjected to an adverse employment action when she was fired, so the first two requirements are readily met.

As for the third,  Podemski relies on circumstantial evidence to make the case, which is, of course, perfectly permissible.  *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).  Circumstantial evidence can be any type of proof that may allow for an inference of retaliation.  *Id.* at 903.  Here, Podemski asserts that the timing of her termination was suspicious, and that an ambiguous statement made by her supervisor and the misbehavior of other Heartland employees are sufficient to establish causation.  At bottom, the evidence that Podemski points to in her effort to connect her complaint of harassment with her firing is simply too tenuous to infer discrimination.  Summary Judgment on the direct method is therefore proper.

As to the timing of her termination, although Podemski's termination occurred six months after she made her second complaint of discrimination, that fact alone does not establish a causal link.  Just because something occurs after the fact does not mean it

occurred because of the fact.  A plaintiff "needs more than a coincidence of timing to create a reasonable inference of retaliation."  *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second.").  Here, the timing of Podemski's termination is not at all suspicious.  If anything, the six month lag between her complaint and her firing tends to lead to the opposite inference.

Podemski next points to Coryn's statement made sometime after her complaint to "watch her back."  Podemski says that a retaliatory motive can be inferred from this statement.  But in order for an ambiguous statement to be probative of discrimination, the statement must have been made "around the time of, and in reference to, the adverse employment action complained of."  *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (internal citations omitted).  Podemski interpreted Coryn's comment to mean that Assistant Plant Manager Hiland was looking to get even with her for making a sexual harassment complaint against his friend Edison.  However, she offers nothing to support that interpretation.  Coryn himself did not recall making that statement.  But assuming he did make the comment, as I must at this stage of the proceedings, Podemski does not allege that it was made near the time of, or in reference to, her termination in February 2006.  So the statement does not add much to establishing a causal connection.

Finally, Podemski identifies four other Heartland employees who used foul language and three others who wore short shorts.  She points to these others as circumstantial evidence that people who did not file complaints but who engaged in

9

similar conduct were not selected for the reduction in force. The problem is that the others she points to were really not similar to her. Where "a plaintiff claims that [she] was disciplined more harshly than a similarly situated employee based on some prohibited reason[,] the plaintiff must show that [she] is similarly situated with respect to performance, qualifications and conduct." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 688 (7th Cir. 2007) (internal citations omitted). "Typically this involves showing that the employees shared the same supervisor, performance standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

As part of the reduction in force, Coryn was asked to recommend employees from his department for termination. Therefore, the most useful comparison in the similarly situated analysis is between Podemski and the other employees in the Electrical Department. There is no evidence that Podemski worked in the same department or shared the same supervisor as the other seven Heartland employees she listed. In fact, the three women who also wore short shorts worked in different departments than Podemski.

What's more, the mere fact that other employees violated one of the same policies as Podemski does not render them similarly situated to her. Podemski must show that the other employees engaged – like she did – in a whole variety of misconduct. She points to no one else who was tardy, used vulgar language, wore inappropriate attire, argued with coworkers, *and* was perceived unwilling to take on more responsibility. These are all the reasons she was selected for termination. None of the other employees that she points to

had a similar track record as she did.

Taken together, the circumstantial evidence that she points to in an effort to establish her case under the direct method does not support an inference of a retaliatory motive. Summary judgment is therefore appropriate under the direct method of proof.

**B.     Indirect Method**

The indirect method requires a plaintiff to first establish a prima facie case that she: (1) engaged in a protected activity; (2) was meeting the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees that did not engage in the protected activity. *Nichols*, 510 F.3d at 785. If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to present evidence of a legitimate, non-retaliatory reason for the adverse employment action. *Id*. If the employer supplies such a reason, the plaintiff must show that the stated reason is a pretext for the retaliation. *Id*. Pretext "means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000).

Podemski has failed to satisfy the second and fourth prongs of the indirect method. First, she cannot show that she was meeting Heartland's legitimate expectations. Podemski only asserts that her work performance was good. But aside from her actual performance, Heartland found her conduct disruptive to the work environment. Heartland's management received numerous complaints regarding her crude language and revealing clothing. She repeatedly quarreled with coworkers. She often arrived to work late. When Heartland proposed increasing her level of production,

her supervisor and the plant manager perceived her as unwilling to cooperate. Second, Podemski has failed to demonstrate that she was treated less favorably than similarly situated employees. As explained earlier, she has not sufficiently shown that she is similarly situated with the other employees that she has identified.

Even if Podemski had established her prima facie case, she is unable to show that Heartland's stated reasons for including her in the reduction were pretext for discrimination. Heartland's primary motivation for terminating her and eight other employees was purely economic. Podemski concedes that the entire reduction in force was not a pretext for discrimination. Instead, she alleges that the reasons for including her for the reduction in force were pretext. However, in order to establish pretext, she must show that Heartland's stated reasons for her termination were dishonest or factually baseless. *See Fischer v. Avande, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008). Nobody doubts that Podemski was a competent electrician. But Coryn nominated her for termination, and Ison approved the termination, because they believed her workplace conduct and appearance created management problems.

Heartland has identified several legitimate nondiscriminatory reasons for including Podemski in the reduction in force, including: tardiness, offensive language, repeated arguments with coworkers, inappropriate dress, and a perceived unwillingness to assume additional responsibility. Podemski concedes that most of the reasons have at least some basis in fact. For example, she admits that she received a written warning for tardiness, made a vulgar joke about menstruating on her coworkers, quarreled with coworkers, and wore revealing shorts. She only disputes the frequency and severity of the infractions. But by admitting that there is some truth to Heartland's reasons for

12

including her in the reduction in force, no reasonable jury could infer that these same reasons are dishonest or factually baseless.  Podemski also points to other employees who violated one of the same company policies, but were not selected for termination, as evidence of pretext.  For reasons cited above, this argument is without merit.

Podemski hasn't come close to showing that the reasons Heartland gave for choosing her for the reduction in force were just plain phony or a pack of lies to hide illegitimate motives.  Summary judgment is therefore appropriate.

## CONCLUSION

The Defendant's Motion for Summary Judgement is **GRANTED**.  The clerk shall **ENTER FINAL JUDGMENT** in favor of Heartland RV and against Pamela J. Podemski.  The clerk shall treat this civil action as **TERMINATED**.  All further settings in this action are hereby **VACATED**.

**SO ORDERED**.

ENTERED: May 2, 2008

　　　　　　　　　　　　　　　　　　　　 s/ Philip P. Simon
　　　　　　　　　　　　　　　　　　　PHILIP P. SIMON, JUDGE
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT